UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN LOGAN,<br>    Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:08-cv-00209 (VLB) |
| SECTEK, INC., ET AL. | : | |
| Defendants. | : | July 8, 2009 |

**MEMORANDUM OF DECISION GRANTING DEFENDANTS
C&D'S AND WOODWARD'S MOTIONS TO DISMISS [Docs. #27, 28]**

The defendants C&D Security Management, Inc. ("C&D"), and Lance Woodward move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the counts directed against them in the amended complaint filed by the plaintiff, John Logan. The named defendant, SecTek, Inc. ("SecTek"), is not a party to the instant motions. C&D and Woodward argue that Logan's amended complaint fails to state claims upon which relief can be granted. For the reasons given below, C&D's and Woodward's motions to dismiss [Docs. #27, 28] are GRANTED.

The following facts taken from Logan's amended complaint are relevant to C&D's and Woodward's motions to dismiss. Logan was employed by SecTek as a security officer at the Cotter Federal Building in Hartford, Connecticut, beginning in January 2000, pursuant to SecTek's contract with the federal government to provide security. While Logan was at work on or about September 22, 2006, he fell and injured his back. Although he experienced pain as a result of the fall, he was able to continue working until November 13, 2006, when he

commenced a leave of absence.  His doctor cleared him to return to work in a light duty capacity on November 28, 2006.  However, SecTek did not offer any light duty work and refused to allow Logan to return to work until he was cleared for regular duty, which did not happen until February 17, 2007.

While Logan was not working, he missed 40 hours of required classroom training that was scheduled to be held during two weekends in December 2006.  SecTek refused to allow Logan to attend that training even though Logan wanted to attend and his doctor permitted him to attend.  On February 14, 2007, Logan informed SecTek that he was ready to return to work on February 17, 2007, but SecTek informed him that he could not do so until he attended the required 40-hour classroom training.  However, SecTek permitted Logan to attend a firearms training class on February 17, 2007.

When Logan arrived for the firearms training class, he learned that SecTek was not in charge of that class because its contract with the federal government was set to expire on March 1, 2007.  Instead, the federal government's new contractor, C&D, was in charge of the firearms training class because C&D was preparing to perform the federal contract.  C&D did not permit Logan to attend the firearms training class on February 17, 2007.  C&D's project manager, Lance Woodward, informed Logan that C&D had decided not to hire him because he had been out of work due to an injury and had not completed the required 40-hour classroom training.  According to Logan, C&D decided to hire most of the security officers who had been employed by SecTek.

Logan then filed the present case against SecTek, C&D, and Woodward. Logan's amended complaint asserts that SecTek and C&D violated the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., the Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen. Stat. § 46a-51 et seq., and the Connecticut Workers' Compensation Act, Conn. Gen. Stat. § 31-275 et seq.  As to C&D specifically, Logan's amended complaint claims failure to hire and retaliation on the ground of disability discrimination.  Logan's amended complaint also asserts that Woodward violated the CFEPA by aiding and abetting C&D's allegedly discriminatory conduct.  C&D and Woodward now move to dismiss the counts of Logan's amended complaint that are directed against them.

The United States Supreme Court recently reexamined the standard governing a motion to dismiss:  "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' . . .  [T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. . . .  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. . . .  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement. . . .

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . .  A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . .  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . .  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. . . .

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . .  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. . . . [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. . . .  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . .  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'  Fed. Rule Civ. Proc. 8(a)(2)."  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949-50 (2009).

The Court first examines whether Logan has stated an ADA claim against C&D for its failure to hire him.  "In order to establish a prima facie case of

discrimination under the ADA, a plaintiff must show (a) that his employer is subject to the ADA; (b) that he is disabled within the meaning of the ADA or perceived to be so by his employer; (c) that he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) that he suffered an adverse employment action because of his disability." Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir. 2008).  C&D focuses on the second element of the prima facie case, arguing that Logan fails to allege sufficient facts showing that he was disabled or that C&D perceived him to be disabled.

Pursuant to 42 U.S.C. § 12102(2), "[t]he term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  C&D argues that even if Logan's back injury was an impairment, it did not substantially limit his ability to work, which is a major life activity under 29 C.F.R. § 1630.2(i). "The ADA does not define 'substantially limits,' but 'substantially' suggests 'considerable' or 'specified to a large degree.' . . .  The EEOC has codified regulations interpreting the term 'substantially limits' in this manner, defining the term to mean '[u]nable to perform' or '[s]ignificantly restricted.'  See 29 C.F.R. §§ 1630.2(j)(1)(i),(ii)." Sutton v. United Air Lines, Inc., 527 U.S. 471, 491 (1999). "[W]hether a person has a disability under the ADA is an individualized inquiry." Id. at 483.  The person claiming to have a disability is to be compared to "the

average person in the general population." 29 C.F.R. § 1630.2(j)(1).

Applying those provisions to the present case, Logan must allege sufficient facts showing that his back injury substantially limited his ability to work, or that C&D perceived Logan's back injury to substantially limit his ability to work. In opposing C&D's motion to dismiss, Logan argues only that C&D perceived him to be disabled, and he relies on Woodward's statement that C&D had decided not to hire him because he had been out of work due to an injury and had not completed the required 40-hour classroom training. In Logan's view, it is enough that he alleged C&D's awareness of his back injury.

However, the standard articulated in <u>Ashcroft v. Iqbal</u> requires Logan's argument to be rejected. <u>Ashcroft v. Iqbal</u> demands "factual enhancement" so that a plausible claim can be stated. <u>Ashcroft v. Iqbal,</u> 129 S. Ct. at 1949. The complaint must enable the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged" by examining the context and marshaling its "judicial experience and common sense." <u>Id.</u> at 1949-50. A "sheer possibility" is not enough. <u>Id.</u> at 1949.

In the present case, it is possible that C&D perceived Logan's back injury to substantially limit his ability to work. However, the only fact that Logan offers in his attempt to make a plausible showing in that regard is Woodward's statement. Woodward mentioned Logan's injury, but an injury is not necessarily a disability as defined in the ADA. Woodward's statement did not indicate whether he perceived the injury to substantially limit Logan's ability to work. The

manner in which Logan's amended complaint recounts the statement supports that conclusion because Woodward linked Logan's absence from work not only to his injury but also to his absence from the required 40-hour classroom training.  Woodward spoke of Logan's injury in the past tense and did not mention Logan's health or ability to work.  Therefore, it is merely possible, but not plausible, that Woodward perceived Logan to be disabled in accordance with the ADA definition.  Logan could have alleged, but does not allege, other facts that would have taken his ADA claim from the realm of possibility to plausibility.  For example, if Logan had alleged that Woodward or other C&D managers made remarks that people with back injuries could not perform most jobs, then Logan might have been able to present a plausible ADA claim.

The Court next examines whether Logan has stated an ADA retaliation claim against C&D.  "To establish a prima facie case of retaliation under the ADA, a plaintiff must establish that (1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action."  Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 224, 234 (2d Cir. 2000).  Under the ADA, "[n]o person shall discriminate against any individual because such individual has opposed any [discriminatory] act or practice . . . or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing . . . ."  42 U.S.C. § 12203(a).  The

protected activity must occur before the adverse employment action occurs.  See Gold v. Carus, 131 Fed. Appx. 748, 750 (2d Cir. 2005).

In the present case, Logan alleges that C&D failed to hire him, and then Logan complained that he was a victim of discrimination.  Logan does not allege that C&D took an adverse action against him after he complained of discrimination.  In fact, Logan acknowledges in his opposition to the motions to dismiss that C&D offered him part-time employment after he complained of discrimination.  Because Logan does not allege facts showing that he engaged in protected activity before experiencing an adverse employment action, his ADA retaliation claim fails.

The Court next examines whether Logan has stated CFEPA claims against C&D and Woodward.  The CFEPA, Conn. Gen. Stat. § 46a-60(a), provides that "[i]t shall be a discriminatory practice in violation of this section:  (1) For an employer . . . except in the case of a bona fide occupational qualification or need, to refuse to hire or employ . . . any individual or to discriminate against such individual . . . because of the individual's . . . physical disability . . . ."  The CFEPA also provides that " '[p]hysically disabled' refers to any individual who has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness . . . ."  Conn. Gen. Stat. § 46a-51(15).  "The statute does not define 'chronic,' but courts have defined it as 'marked by long duration or frequent recurrence' or 'always present or encountered.' . . .  With reference to diseases, the term 'chronic' has

been defined to mean 'of long duration, or characterized by slowly progressive symptoms; deep-seated or obstinate, or threatening a long continuance; distinguished from acute.' " Gomez v. Laidlaw Transit, Inc., 455 F. Supp. 2d 81, 88 (D. Conn. 2006).

In order to maintain claims under the CFEPA, Logan must allege sufficient facts showing that his back injury was a chronic impairment.  Logan alleges that he suffered the injury on or about September 22, 2006, and that his doctor cleared him to return to work in a regular duty capacity on February 17, 2007.  Logan's amended complaint thus indicates that his back injury was fully resolved by February 17, 2007, the date when Woodward informed him that C&D had decided not to hire him.  Logan's amended complaint does not allege any facts indicating that his back injury was of long duration, frequently recurred, or was continuously present.  Therefore, Logan cannot maintain CFEPA claims against C&D and Woodward.

The final issue is whether Logan has stated a claim against C&D for violation of the Connecticut Workers' Compensation Act.  The Connecticut Supreme Court has explained that the act "is directed toward those who are in the employer-employee relationship as those terms are defined in the act . . . . That relationship is threshold to the rights and benefits under the act; a claimant . . . who is not an employee has no right under this statute to claim for and be awarded benefits. . . .  [A claimant] may invoke the remedy provided under the [act] only if [the claimant], as a matter of law, satisfies the requisite jurisdictional

standard of employee as defined by the legislature . . . ."  <u>Smith v. Yurkovsky</u>, 265 Conn. 816, 823, 830 A.2d 743 (2003); see also <u>Kinney v. State</u>, 213 Conn. 54, 60, 566 A.2d 670 (1989).  The relevant portion of the Connecticut Workers' Compensation Act, Conn. Gen. Stat. § 31-275(9)(A), provides that " '[e]mployee' means any person who:  (i) Has entered into or works under any contract of service or apprenticeship with an employer . . . ."  Because Logan had not entered into an employment relationship with C&D, he may not maintain a claim under the Connecticut Workers' Compensation Act.

  C&D's and Woodward's motions to dismiss [Docs. #27, 28] are GRANTED.

          IT IS SO ORDERED.

          _____/s/_____
          **Vanessa L. Bryant**
          **United States District Judge**

Dated at Hartford, Connecticut:  July 8, 2009.